UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| JOHN DOE, | : | |
|     Plaintiff, | : | CIV. NO.: 3:04-cv-1197 (WWE) |
| | : | |
| v. | : | |
| | : | |
| CITY OF BRIDGEPORT, ET AL. | : | |
|     Defendants. | : | |
| | : | |

## RULING ON DEFENDANTS JUDY STEVENS AND PAMELA ESPOSITO'S MOTION FOR SUMMARY JUDGMENT

The plaintiff in this case, John Doe, filed a complaint in June 2004, alleging violations of his rights pursuant to 42 U.S.C. sections 1983, 1986, 1988, Conn. Gen. Stat. Sections 25-19 and 142a(e) and Connecticut common law against the defendants, Judy Stevens and Pamela Esposito, two Assistant State's Attorneys for the State of Connecticut.[1] Stevens and Esposito are being sued in their official and individual capacities. As best as can be gleaned from the plaintiff's 31-count complaint, the following are the complaints directed against the defendants Stevens and Esposito: violations of his rights pursuant to the 4th, 5th and 14th Amendments of the United States

---

[1] The plaintiff has also brought suit against the City of Bridgeport, the Bridgeport Police Department, Police Chief Wilbur Chapman, Officers Wuchek, Spillane, Serrano, Joaquim DeBarros and Lattanzio (the Bridgeport defendants). They are not parties to this Motion for Summary Judgment. Defendants Town of West Hartford, Chief of Police James Strillacci, Officer Brian Hill and Officer "X" (the West Hartford defendants) previously filed a Motion to Dismiss [Doc. # 55] that was granted in part and denied in part [Doc. # 103]. They are not parties to this Motion for Summary Judgment. The plaintiff also brought suit against Nicole Thompson. She is not a party to the Motion for Summary Judgment.

Constitution (count one)[2]; violations of his rights pursuant to 42 U.S.C. section 1983 (counts three and four); malicious prosecution (counts twenty-one and twenty-two and twenty-three); retaliation (count twenty-six); intentional infliction of emotional distress (counts twenty-eight and twenty-nine); civil conspiracy (count thirty); and reckless and wanton misconduct (count thirty-one).   The defendants have filed a motion for summary judgment on all claims against them, claiming that the Eleventh Amendment to the United States Constitution bars this action against them in their official capacities; the State is not a "person" subject to liability under 42 U.S.C. section 1983; the defendants are protected by their absolute prosecutorial immunity; the plaintiff previously released the defendants from liability; the plaintiff has failed to prove personal participation or responsibility; the plaintiff has failed to state a claim upon which relief can be granted; the defendants are protected by qualified immunity; certain claims are barred by the applicable statutes of limitations; the state law claims are barred by sovereign immunity and by the plaintiff's failure to exhaust his state administrative remedies.   The defendants further argue that the Court should decline to accept jurisdiction of said state claims.

---

[2]In count one, the plaintiff also argues that the defendants: a) deprived him of his liberty without due process of law; b) took him into custody and held him there against his will; c) made an unreasonable search and seizure without due process of law; d) conspired to deny the plaintiff equal protection; e) deprived the plaintiff of his rights, privileges and immunities as guaranteed by the 4th, 5th and 14th Amendments.  While the defendant directs these claims against "all defendants in their official capacities," it is not clear how the defendants Stevens and Esposito are privy to all these claims.  As best as it can determine, the Court finds that the only aspects of count one that may be directed at Stevens and Esposito are: d) conspiracy and e) deprivation of constitutional rights.  The other claims within count one are directed to the other defendants and will not be addressed in this ruling.

I.     BACKGROUND

The plaintiff was arrested during the early morning hours of July 18, 2001 after a fight in the apartment of defendant Nicole Thompson, during which both the plaintiff and Thompson sustained minor injuries.  The plaintiff was charged with assault in the third degree and the case was considered a domestic violence offense between boyfriend and girlfriend.

At all times relevant to this case, the defendants Judy Stevens and Pamela Esposito were Assistant States' Attorneys in Bridgeport Superior Court, Geographic Area No. 2 (G.A. #2), where they were members of the Domestic Violence Unit.

The plaintiff was arraigned on July 18, 2001 at G.A. #2 and probable cause was found for his arrest.  He was released on bond and the case was continued to August 29, 2001.  Defendant Esposito handled the plaintiff's arraignment.  On August 29, defendant Stevens met with the plaintiff and discussed the Family Services Report that had been filed.  His next court date was scheduled for November 14, 2001.

On November 14, 2001, the plaintiff failed to appear and the Bail Commissioner subsequently sent the plaintiff a letter, informing him that he had until December 6, 2001 to appear.  On that date, the plaintiff again failed to appear and the Court ordered that a re-arrest warrant be issued.  Stevens issued this warrant.

The plaintiff then moved to vacate the re-arrest warrant and said motion was heard by the Superior Court on January 25, 2002.  Esposito represented the State in this matter.  The court granted the plaintiff's motion to vacate.

Despite the court's granting of the plaintiff's motion to vacate, the plaintiff was re-arrested pursuant to the warrant on January 29, 2002, by the West Hartford Police.  He

was presented for arraignment on January 30, 2002 and the court dismissed the plaintiff's failure to appear charge.  The plaintiff's underlying charge of assault in the third degree was continued until February 20, 2002.  Stevens, in her capacity as Assistant State's Attorney, entered a nolle in the case.  The plaintiff requested a dismissal.  The court denied this request.

The plaintiff appealed the denial of his dismissal to the Connecticut Appellate Court.  The Appellate Court remanded the case, "with instructions to allow the state the opportunity to make the necessary representations to allow the trial court to determine whether nolles should enter as to the charges in question.  If the state is unable or unwilling to make the requisite representations, the defendant is entitled to a dismissal of the charges or an immediate trial."  State v. Doe, 75 Conn. App. 140, 142 (2003).

On July 23, 2003, following plea negotiations, the court entered a dismissal and the plaintiff agreed to release and hold harmless the State, municipalities and officers concerning his July 18, 2001 arrest.  On July 19, 2004, the plaintiff filed this suit and defendants Stevens and Esposito now move for summary judgment.

## II.     DISCUSSION

A motion for summary judgment will be granted where there is no genuine issue as to any material fact and it is clear that the moving party is entitled to judgment as a matter of law.  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  "Only when reasonable minds could not differ as to the import of the evidence is summary judgment proper."  Bryant v. Maffucci, 923 F. 2d 979, 982 (2d Cir.), cert. denied, 502 U.S. 849 (1991).

The burden is on the moving party to demonstrate the absence of any material

4

factual issue genuinely in dispute.  American International Group, Inc. v. London American International Corp., 664 F. 2d 348, 351 (2d Cir. 1981).  In determining whether a genuine factual issue exists, the court must resolve all ambiguities and draw all reasonable inferences against the moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  If a nonmoving party has failed to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, then summary judgment is appropriate.  Celotex Corp., 477 U.S. at 323.  If the nonmoving party submits evidence which is "merely colorable," legally sufficient opposition to the motion for summary judgment is not met.  Anderson, 477 U.S. at 249.

1.  Eleventh Amendment

The plaintiff argues that Stevens and Esposito violated his rights in their official capacities.  Stevens and Esposito counter that the Eleventh Amendment provides the protection of sovereign immunity and, therefore, precludes a suit for damages against a state and its agencies.

The Eleventh Amendment provides:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state or by citizens or subjects of any foreign state.

This also has been construed as limiting federal jurisdiction over suits brought by a citizen against his own state.  Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 98, 104 S.Ct. 900, 79 L.Ed.2d 67(1983).

Furthermore, Article III of the Constitution limits suits against the states to those only brought with the state's consent.  Thus, a sovereign's immunity may be waived, but

5

the state's consent to suit must be "unequivocally expressed." Id. at 99. "Where a defendant successfully demonstrates entitlement to sovereign immunity, the federal courts lack jurisdiction over the case and the case must be stricken from the docket." Johnson v. Connecticut Department of Children and Families, 2004 WL 722237 *3 (D.Conn.).

In establishing whether a suit against a defendant in her official capacity is actually a suit against the state, one must consider whether the suit against the officer is only "another way of pleading an action against an entity of which an officer is an agent." Id. at *4. "The Eleventh Amendment bars a suit against state officials when the state is the real, substantial party in interest. Thus, the general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter." Pennhurst, 465 U.S. at 101.

Here, the defendant seeks monetary relief from Stevens and Esposito in their official capacities as Assistant State's Attorneys. In so doing, the plaintiff implicates the Office of the State's Attorney, an agency of the State. The Office of the State's Attorney has not consented to suit. The plaintiff does not allege that there has been any such consent and, therefore, his claims against Stevens and Esposito cannot survive summary judgment. The Court will grant summary judgment on the plaintiff's claims against the defendants pursuant to the Eleventh Amendment.

    2.       Absolute Prosecutorial Immunity

If the Eleventh Amendment does not preclude the plaintiff from bringing this suit, the defendants argue that they are protected by absolute prosecutorial immunity. Pursuant to this grant of immunity, a prosecutor is afforded absolute protection from

liability for their actions committed in the scope of their official duties.  The United States Supreme Court has "categorically stated that acts undertaken by a prosecutor in preparing for the initiation of judicial proceedings or for trial, and which occur in the course of his role as an advocate for the State, are entitled to the protections of absolute immunity."  Kalina v. Fletcher, 522 U.S. 118, 126, 118 S. Ct. 502, 139 L.Ed.2d 471 (1997).  The Court has specifically stated that "in initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under 1983."  Imbler v. Pachtman, 424 U.S. 409, 431, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976).   The Court has clarified that "the absolute immunity that protects the prosecutor's role as an advocate is not grounded in any special esteem for those who perform these functions, and certainly not from a desire to shield abuses of office, but because any lesser degree of immunity could impair the judicial process itself."  Kalina, 522 U.S. at 127.  However, there are limits to the extent of this absolute immunity.

> There is a difference between the advocate's role in evaluating evidence and interviewing witnesses as he prepares for trial, on the one hand, and the detective's role in searching for the clues and corroboration that might give him probable cause to recommend that a suspect be arrested on the other hand.  When a prosecutor performs the investigative functions normally performed by a detective or police officer, it is neither appropriate nor justifiable that, for the same act, immunity should protect one and not the other.

Buckley v. Fitzsimmons, 509 U.S. 259, 273-74, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993).

In this case, the defendants Stevens and Esposito did not perform acts outside the scope of their roles as prosecutors. In fact, the plaintiff fails to allege any activities that either Stevens or Esposito performed that were outside the realm of prosecutorial

duty. Specifically, he claims that: 1) Stevens wrongfully issued a re-arrest warrant for him on December 6, 2001; 2) she maliciously prosecuted him on the re-arrest warrant; 3) she maliciously prosecuted him after the Appellate Court reversed the Superior Court's denial of a dismissal of his case; 4) she performed these acts in retaliation for the plaintiff's conduct; and 5) she was a member of a conspiracy of all the defendants to act against his interests. He argues that Esposito: 1) falsely assured the plaintiff as to the vacating of his re-arrest warrant; 2) illegally prosecuted him after the charges against him were nolled; 3) retaliated against him; and 4) in concert with all the other defendants, conspired to defame him by virtue of the alleged dissemination of the details of his arrest and re-arrest. None of these allegations, even if true, demonstrates activity beyond the scope of either defendants' duties as Assistant State's Attorneys.

All of the alleged acts performed by Stevens and Esposito were related to their in-court advocacy for the State vis-a-vis the prosecution of the plaintiff. All alleged conduct related to the re-arrest warrant is "intimately associated with the judicial phase of the criminal process." Pinaud v. Suffolk, 52 F.3d 1139, 1147 (2d Cir. 1995).

As to the plaintiff's complaints about the manner in which the defendants conducted these activities (maliciously, fraudulently, and in furtherance of a conspiracy), Stevens and Esposito are still afforded absolute immunity for their in-court advocacy. A prosecutor has absolute immunity for his role as an advocate, despite the alleged way in which his conduct was executed.

> The immunity attaches to his function, not to the manner in which he performed it. Virtually all acts, regardless of motivation, associated with the prosecutor's function as an advocate, when the underlying activity at issue is covered by absolute immunity, the plaintiff derives no benefit from alleging a conspiracy. Since absolute immunity spares the official of any

>scrutiny of his motives, an allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity.

Id. at 1148-49.

The plaintiff does not allege any acts that can be construed as outside the scope of Stevens' and Esposito's roles as Assistant State's Attorneys and any alleged motives fall within the purview of prosecutorial absolute immunity. Accordingly, pursuant to the doctrine of absolute prosecutorial immunity, the Court will grant summary judgment.

3.   Individual Capacity

Even if the defendants were not protected by absolute prosecutorial immunity, the plaintiff cannot prevail on his claims against Stevens and Esposito in their "individual capacities."

"Even when sued in their individual capacities, prosecutors enjoy absolute immunity so long as the allegations against them arise out of their role in initiating a prosecution and presenting the State's case." Hamilton v. Broomfield, 1998 WL 17697 *3 (S.D.N.Y.). In Imbler, the Supreme Court asserted that "if a prosecutor had only a qualified immunity, the threat of section 1983 suits would undermine performance of his duties no less than would the threat of common-law suits for malicious prosecution." Imbler, 424 U.S. at 424. "The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his potential liability in a suit for damages." Id. at 424-45. "The ultimate fairness of the operation of the system itself could be weakened by subjecting prosecutors to 1983 liability." Id. at 427.

As explained, *supra*, the acts of the defendants fit squarely into their roles as

9

Assistant State's Attorneys.  Neither their actions nor their conduct can be considered outside the scope of their roles as advocates for the State.   However, even if Stevens' and Esposito's conduct was determined, *arguendo*, to be outside the scope of their roles as prosecutors, they are entitled to qualified immunity.  In Hamilton, the plaintiff claimed that the prosecutors violated his rights under section 1983 in that they participated in the investigation of his alleged crime and made statements to the media regarding his arrest.   Finding that these acts were not conducted within the bounds of prosecution, the United States Supreme Court held that the defendants were, therefore, only entitled to qualified immunity, not the protection of absolute immunity.

The scope of qualified immunity is broad.  Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  Malley v. Briggs, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986).

The test for qualified immunity is twofold and must be considered in sequence. The threshold question is whether, taken in the light most favorable to the plaintiff, do the facts demonstrate the official's violation of one of the plaintiff's constitutional rights. The next question is whether that constitutional right was clearly established within the specific context of the case.  In other words, the court must consider whether the constitutional right was clear enough so that a reasonable officer would understand that his actions would violate that right.  Saucier v. Katz, 533 U.S. 194, 202, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001).  "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."  Id.

Here, there are no allegations that satisfy the Court that either Stevens or

Esposito violated the plaintiff's constitutional rights.  Even assuming that Stevens' and Esposito's actions were not within the realm of their duties as prosecutors and were, instead, found to be on a par with other officers, such as the police, the inquiry regarding the prosecutors' conduct would end at this point.   Therefore, even if the defendants are not considered protected by absolute prosecutorial immunity, the Court will grant summary judgment pursuant to the doctrine of qualified immunity.

    4.  Release Agreement

  Even if the defendants were not protected by the Eleventh Amendment's prohibition against suit against the State, absolute prosecutorial immunity or qualified immunity, they would be entitled to summary judgment due to the release agreement the plaintiff entered into in exchange for dismissal of his case.  The release agreement covered all issues except for the erroneous arrest after the vacating of the re-arrest warrant in January, 2002.  In so doing, he received a dismissal of the pending charges in exchange for a bar to all subsequent civil litigation related to all other acts.

  A person charged with a crime or crimes may release the police and prosecutors from any future causes of action relating to their arrest and prosecution in exchange for a dismissal of the charges filed against them.  <u>Town of Newton v. Rumery</u>, 480 U.S. 386, 107 S.Ct. 1187, 94 L.Ed.2d 405 (1987). There is a three-prong test regarding an analysis of the validity of a release agreement: 1) the voluntariness of the agreement; 2) evidence of prosecutorial misconduct; and 3) whether enforcement of the agreement would adversely affect relevant public interests.  <u>Cuba-Diaz v. Town of Windham</u>, 274 F.Supp.2d 221, 226 (D. Conn. 2003).

  There is no doubt in this case as to the voluntary nature of the plaintiff's entrance

into the agreement.  Despite his conclusory statements as to his being "bullied" into the agreement, there is no genuine issue of material fact in contradiction of the incontrovertible fact that he clearly agreed to the scope of the release in open court.  In Rumery, the Court considered the fact that the plaintiff was a "knowledgeable, industrious individual with vast experience in the business world" as indicative of the informed and voluntary nature of his entering into the agreement.  Rumery, 480 U.S. at 391.  In Cuba-Diaz, the plaintiff signed the release form voluntarily as demonstrated by the fact that he did so in front of a judge and while represented by counsel.  Cuba-Diaz, 274 F.Supp.2d at 226. Here, the plaintiff is an attorney with criminal defense experience and he negotiated the release agreement himself and agreed to it in open court.  Consistent with the standards articulated in Rumery and Cuba-Diaz, it is evident here that the plaintiff's entry into the release agreement was voluntary.

In regard to the prosecutorial misconduct prong of the test, there is not a genuine issue of material fact as to Stevens' and Esposito's conduct related to the obtaining of the release agreement. In Rumery, the Supreme Court demonstrates a deference to prosecutorial judgments as to whom to prosecute.  The Supreme Court expressed that the prosecutor's decision to enter into an agreement is "not readily susceptible to the kind of analysis the courts are competent to undertake" and that the courts have, therefore, been "properly hesitant to examine the decision whether to prosecute." Rumery, 480 U.S. at 396.  While the plaintiff in the present case alludes to misconduct on the part of both Stevens and Esposito, he does not set forth issues of fact regarding such allegations.  Therefore, the Court will defer to the prosecutors' judgment as to the

merits of the release and will not infer misconduct on their part.

As to the public interest inquiry, the defendants argue that the public interest was served by the release agreement in that it was supposed to curtail further expenditure of judicial resources.  The plaintiff claims that by enforcing this agreement, the court would be encouraging the defendants to "trammel on federal and constitutional and civil rights."  As the Court has determined that the plaintiff did not suffer any violations of his federal or constitutional rights, this argument is groundless.  The Court agrees with the defendants.

The Court will grant summary judgment as to the defendants' claim that the release agreement precludes the plaintiff from bringing this suit.

5.      State Law Claims

Pursuant to 28 U.S.C. section 1367(c)(3), the Court will decline to exercise its supplemental jurisdiction over the plaintiff's state law claims because it has dismissed all claims over which it has original jurisdiction.

13

### III. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment on all the plaintiff's claims against defendants Stevens and Esposito [Doc. # 83]. The state law claims against Stevens and Esposito are dismissed without prejudice since the Court has declined to exercise supplemental jurisdiction.

SO ORDERED this _5th_ day of April, 2006 at Bridgeport, Connecticut.

_____/s/_____
Warren W. Eginton
Senior United States District Judge